James **OLIVERIUS**, Plaintiff-Appellant,

v.

**PENNSYLVANIA RAILROAD COMPANY**, a Pennsylvania corporation, Defendant-Appellee.

No. 13111.

United States Court of Appeals Seventh Circuit.

May 1, 1961.

Rehearing Denied June 27, 1961.

James A. Dooley, Chicago, Ill., Paul Reed, Knox, Ind., for appellant.

Otto E. Grant, Jr., Phil M. McNagny, J. A. Bruggeman, Barrett, Barrett & McNagny, Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

James Oliverius, plaintiff, sued The Pennsylvania Railroad Company, a Pennsylvania corporation, in the district court, for personal injuries alleged to have been sustained as a result of negligent operation of one of defendant's trains. The district court, at the conclusion of all the evidence, declined to instruct the jury to find defendant guilty on the issue of liability, or in the alternative to submit to the jury only the issue of damages, and the jury thereafter returned a verdict for defendant. Plaintiff's motion for a directed verdict was renewed and denied. Subsequently, plaintiff's motion for a new trial was denied, and this appeal has followed.

The accident in question occurred on February 5, 1953, at Canton, Ohio, where defendant was operating a train consisting of two steam engines and twenty-two cars, including a postal car, in which plaintiff was performing the duties of a railroad mail clerk. While the train was there involved in switching operations, including the adding of a car to the head of the train, plaintiff, who was standing, sorting mail, was in the act of throwing a heavy piece of mail to a pouch, when a lurch of the train, which he described as sudden, violent and unusual, caused his feet to push forward, whipped and jerked his body, and produced a feeling "like I broke up high in my ribs." This was followed by soreness in the back, illness and a visit to a doctor who gave him a shot, and he returned to work the next day, at which time he was unable to perform his duties, being hospitalized on different occasions thereafter. There was a conflict in the evidence as to the nature of the lurch of the train, to which plaintiff had testified. One witness testified that the car was suddenly and violently jerked forward, another that those in the car were subjected to "an unusual, violent blow", while another testified that there was "an unusual jolt" and he was "knocked sideways against a pouch rack and kind of off" his feet, coffee sitting on a ledge being knocked over.

Nine members of the train crew testified. Conductor Little, in charge of the train said that he went through the train according to his custom after pulling out from Canton and no passenger reported any rough handling of any kind or any sudden or unusual jolt of the train; that plaintiff's supervisor made no report to him of any accident nor did any mail clerk report any unusual lurch of the mail car or that plaintiff had been hurt and that he would have reported it to the Company if they had; that it was part of his duty as conductor on the train to report any rough handling, regardless of the source of his information. A copy of conductor Little's regular report of the trip was introduced in evidence, as defendant's exhibit 6. On that exhibit he made a checkmark "no" in the space below the query "Was train handled roughly?" He testified that, "refreshing his recollection from Defendant's Exhibit 6, there was no rough handling of the train".

Brakeman Bigley testified that there is bound to be a jar or movement of cars in switching operations under normal conditions, and that he had no recollection of anything that happened that night which was unusual or any violent jar or jerk of any part of the train.

Among the other witnesses testifying were the fireman, both of the engineers, and the baggageman, who all testified in effect that there was no unusual occurrence on the night in question and that in the normal, usual operation of a train there are numerous jars, jolts and lurches.

All of this evidence, both positive and negative in its nature, was heard by the jury, whose function it was to decide questions of fact.

■ 1. Plaintiff states as a contested issue, the following:

"Did the negative evidence of defendant, when contrasted with the positive evidence of plaintiff, create an issue of controverted fact which required the submission of the question of liability to the jury?"

Obviously the answer to this question is in the affirmative. The district court did not err in permitting the cause to go to the jury on the issue of defendant's liability because the evidence before the court on that question created an issue of controverted fact which required submission of the question of liability to the jury.

For the same reasons, it would have been error for the court to have sustained plaintiff's motion for a directed verdict in favor of plaintiff.

2. Counsel for both parties treat plaintiff as falling in the same classification as a passenger so far as the relative rights and duties of plaintiff and defendant are concerned in this case. However, plaintiff contends that the court erred in instructing the jury that plaintiff, as a passenger, "assumed all ordinary risks resulting from the proper operation of the train."

Defendant insists that the instruction, in its entirety, correctly states the law. We quote it:

"Railroads are not liable for injuries to passengers resulting from ordinary jerks and jolts of cars which are usually incident to the operation of a train. In such instances, the passengers assume all ordinary risks resulting from the proper operation of the train. On the other hand a railroad is liable for injuries to passengers caused by jerks or jolts which are so unusual and violent as to take these kinds of train movements out of the class or category of those ordinarily incident to travel.

"As I indicated before, the mere fact that the plaintiff may have received an injury would not in itself render the railroad liable. The burden is on him, the plaintiff, to show negligence on the part of the railroad, that is, that his injury resulted from a jerk or jolt of an unusual or violent nature, and one that was in excess of the ordinary type of jerk or jolt which was incident or reasonably to be expected during the course of traveling on a train.

"If you find that Mr. Oliverius was injured as the result of an unusual

and violent jerk or jolt and in excess of the ordinary type of jerk or jolt, such fact is evidence of negligence on the part of the railroad, and the plaintiff is not required to point out the particular reasons for such unusual or violent movement of the train.

"On the other hand, as I said before—and I think that this is sort of repetitious—if you find that Mr. Oliverius was not injured as the result of any unusual or violent jerk or jolt, or one that was in excess of the ordinary jolt or jerk, then he is not entitled to recover."

Plaintiff's counsel criticizes this instruction on the ground that "the doctrine of assumption of the risk does not apply." We believe that the instruction correctly states the law in language which a jury can readily understand. We see no likelihood that laymen serving upon a jury would become confused by the legal doctrine of assumed risk which lawyers and courts apply especially to cases arising out of a master and servant relationship.

Plaintiff also attacks the foregoing instruction because it told the jury "that the mere fact plaintiff received an injury would not in itself render the railroad liable." This objection is unwarranted. The court painstakingly draws a distinction between the mere fact of injury, on the one hand, and an injury resulting from a jerk or jolt of an unusual or violent nature, on the other hand, in which latter situation plaintiff "is not required to point out the particular reasons for such unusual or violent movement of the train."

Plaintiff specifically attacks that part of the instruction above quoted, in which the court told the jury: "As I indicated before, the mere fact that the plaintiff may have received an injury would not in itself render the railroad liable." In so doing, he ignores the context and instead relies on Minnis v. Friend, 360 Ill. 328, 337, 196 N.E. 191, 195, where the Illinois court frowned upon a refused instruction which contained the following language:

" * * * 'No presumption that the defendant Arnold Friend was negligent arises from the fact that the accident happened.' * * *"

The instruction under attack in this case does not speak of a presumption of negligence arising from the happening of the accident. It explains, as the preceding language of the court had already indicated, that the mere fact of receipt by plaintiff of an injury would not render defendant liable. It restated that the burden remained upon him to prove negligence on the part of defendant and that his injury resulted from a jerk or jolt of an unusual or violent nature, etc.

We find no basis for plaintiff's criticism of this part of the instruction.

We find no error in the record of the district court. Therefore, its judgment is affirmed.

Judgment affirmed.